| | | |
|---|---|---|
| AMANDA HIPPLE, | ) | |
| | ) | |
| *Plaintiff,* | ) | Case No. 1:25-CV-201 |
| | ) | |
| v. | ) | Judge Curtis L. Collier |
| | ) | |
| MARCIA ERICA EBANKS, | ) | Magistrate Judge Christopher H. Steger |
| | ) | |
| *Defendant.* | ) | |

## **M E M O R A N D U M**

Before the Court is a motion by Defendant Marcia Erica Ebanks to dismiss Plaintiff's complaint in its entirety. (Doc. 13 at 6–14.) Defendant moves to dismiss under Federal Rules of Civil Procedure 12(b)(1), (2), (5), and (6). (*Id*. at 6–7.) Plaintiff filed a response in opposition (Doc. 34) and Defendant replied (Doc. 56).

## I.   **BACKGROUND**[1]

Plaintiff describes herself as "an author of stories, and children's stories in particular." (Doc. 1 ¶ 11.) In or around 2003, Plaintiff authored a children's book titled "Tiny Tailed Timmy." ("the Work") (*Id*. ¶ 12.) Years later, Plaintiff sought to commission illustrations to accompany the text. (*Id*. ¶ 14.) In approximately 2020, Plaintiff met Defendant through the H\*art Gallery in Chattanooga, Tennessee. (*Id*. ¶ 15.) The parties made an agreement for Defendant to create illustrations inspired by Plaintiff's story. (*Id*.; Doc. 13 at 1.)

The rights associated with the work are disputed. Plaintiff claims that "[i]t was never the parties' intent that they be considered joint authors of any combination of the Work and the

---

[1] This summary of the facts accepts all the factual allegations in Plaintiff's complaint as true. *See Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

Illustrations." (Doc. 1 ¶ 17.) Plaintiff represents that "Defendant has admitted in written communications with Plaintiff that Plaintiff, and only Plaintiff, owns the Work." (Doc. 1 ¶ 22.)

The parties do not dispute that Defendant provided Plaintiff "delivery of a finished product" with artwork complimentary to Plaintiff's story and Plaintiff paid Defendant $1000. (Doc. 13 at 2.) Nor is disputed that, in August 2022, Plaintiff registered a copyright for the Work with the U.S. Copyright Office listing Plaintiff as the sole author. (Doc. 1-3.) The work is still unpublished. (Doc. 1 ¶ 23.)

In approximately 2023, Defendant began marketing a children's book titled "Tiny Tailed Tammy" with herself as the sole author. (*Id*. ¶¶ 24, 27.) In August 2024, Plaintiff informed Defendant of the copyright and "warned Defendant not to make unauthorized copies of the Work." (Doc. 1 ¶ 26.) On June 23, 2025, believing that Defendant's product and related merchandise was a "knock-off" and "an obvious copy or derivative work of the original story in the Work," Plaintiff filed this complaint. (Doc. 1 at 1, ¶ 25.) This Court issued Summons on June 25, 2025. (Doc. 5.) But Plaintiff encountered issues and delays in serving Defendant.

On October 28, 2025, in response to the Court's order to show cause why her claims should not be dismissed for lack of prosecution (Doc. 6), Plaintiff detailed failed efforts made to serve Defendant. (Doc. 7.) Plaintiff hired a private process server in Florida, Defendant's last known location. (*Id*. at 1–2.) The process server made numerous attempts at service at Defendant's place of residence. (*Id*. at 1.) During these attempts, the process server "observed signs of occupancy, including cars in the driveway and movement inside the residence." (Doc. 7 at 2.) However, no service was effectuated. Ultimately, on November 6, 2025, service of the summons was executed on Defendant at her place of employment. (Doc. 9.) On November 25, 2025, Plaintiff filed an affidavit of service attesting to this. (Doc. 9.)

2

## II.     STANDARD OF REVIEW

### a.     Rule 12(b)(1)

When a defendant moves to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction. *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007) (quoting *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir.1990)).  A Rule 12(b)(1) motion may present either a facial attack, which questions the sufficiency of the pleadings, or a factual attack, which challenges the factual existence of subject-matter jurisdiction. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  "When reviewing a facial attack, a district court takes the allegations in the complaint as true," though conclusory allegations and legal conclusions will not prevent dismissal. *Gentek Bldg. Prods. v. Sherwin-Williams Claims*, 491 F.3d 320, 330 (6th Cir. 2007).

### b.     Rule 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction, the "party seeking to assert personal jurisdiction bears the burden" of proving the court has jurisdiction over the defendant. *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003) (citing *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir. 2002)).  When a question of personal jurisdiction is decided without an evidentiary hearing, courts are to look "only to the pleadings and affidavits of the nonmoving party and do not consider the moving party's conflicting assertions." *Flynn v. Greg Anthony Constr. Co.*, 95 F. App'x 726, 731 (6th Cir. 2003) (citing *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002)).  The plaintiff need only make a *prima facie* showing that jurisdiction is proper. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

### c.  <u>Rule 12(b)(5)</u>

When a defendant moves to dismiss for insufficient service of process under Rule 12(b)(5), "the plaintiff bears the burden of proving that proper service was effected." *Frederick v. Hydro-Aluminum S.A.*, 153 F.R.D. 120, 123 (E.D. Mich. 1994) (citing *Aetna Bus. Credit, Inc. v. Universal Decor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981)); *see also Shires v. Magnavox Co.*, 74 F.R.D. 373, 377 (E.D. Tenn. 1977) (citing 5 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.: Civil* 528 § 1353 (burden is on party serving process to establish its validity)).  To resolve a motion to dismiss for insufficient service of process, "[t]he court must look to matters outside the complaint to determine what steps, if any, the plaintiff took to effect service." *SignalQuest, Inc. v. Tien-Ming Chou & Oncque Corp.*, 284 F.R.D. 45, 46 (D.N.H. 2012) (quoting *C3 Media & Mktg. Grp., LLC v. Firstgate Internet, Inc.*, 419 F. Supp. 2d 419, 427 (S.D.N.Y. 2005)).

### d.  <u>Rule 12(b)(6)</u>

A defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In ruling on a motion to dismiss under Rule 12(b)(6), a court must accept all of the factual allegations in the complaint as true and construe the complaint in the light most favorable to the plaintiff.  *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting *Hill v. Blue Cross & Blue Shield of Mich.*, 49 F.3d 710, 716 (6th Cir. 2005)).  The court is not, however, bound to accept bare assertions of legal conclusions as true.  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In deciding a motion under Rule 12(b)(6), a court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a complaint need only contain a "short and plain

statement of the claim showing that the pleader is entitled to relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)), this statement must nevertheless contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. 556). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997).

## III.     DISCUSSION

Defendant raises arguments for dismissal under Federal Rule of Civil Procedure 12(b)(1), (2), (5), and (6). The court will address each in turn.

### a.     12(b)(1)

Defendant raises the defense of lack of subject-matter jurisdiction. Defendant argues for dismissal on the basis that there is "[no] case or controversy; claims moot or hypothetical." (Doc. 13 at 6.) Defendant does not provide any further details or argument. But Plaintiff bears the burden of proving jurisdiction. *Davis*, 499 F.3d at 594. In the complaint, Plaintiff clearly provides justification for this court's subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338

5

and under the copyright laws at 17 U.S.C. §101, et seq. and Lanham Act at 15 U.S.C. § 1051, et. seq. (Doc. 1 ¶ 9.) Plaintiff has also demonstrated that the claims are a live controversy, not moot or merely hypothetical. Therefore, the Court finds that it has subject matter jurisdiction to hear and adjudicate this case.

### b. **12(b)(2)**

Defendant raises the defense of lack of personal jurisdiction. Similarly, Defendant fails to provide cogent reasoning for this argument other than stating there are "[n]o minimum contacts." (Doc. 13 at 6.) Additionally, Defendant cites 12(b)(2) for arguments relating to service. Those will be addressed separately. (*See* § III(c) *infra*.)

Under the Due Process Clause, the Defendant must "have certain minimum contacts with [the forum state] such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

"Personal jurisdiction may be either general or specific, depending upon the nature of the contacts that the defendant has with the forum state." *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002) (citing *Conti v. Pneumatic Prods. Corp.,* 977 F.2d 978, 981 (6th Cir.1992)). "In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 264 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A., v. Brown*, 564 U.S. 915, 919 (2011)). The Court of Appeals for the Sixth Circuit has provided a three-part test to determine whether the exercise of specific personal jurisdiction comports with Due Process. *See Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007). Under this test, three

6

elements are necessary: (1) "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state," (2) "the cause of action must arise from the defendant's activities there," and (3) "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Id.*

In the complaint, Plaintiff clearly provided justification for this court's personal jurisdiction over Defendant. (*See* Doc. 1 ¶ 7–8.) Plaintiff's claims arise from a contract that was signed in Tennessee and in connection with a Tennessee art gallery where she displays and sells her work. (*Id.*) That Defendant is currently a resident of, and was served with process in, Florida does not nullify this court retaining personal jurisdiction.

c. **12(b)(5)**

Defendant raises the defense of insufficient service of process. Defendant argues there was no authorized server, no identification, and service did not strictly comply with Rule 4 of the Federal Rules of Civil Procedure. Defendant cites the following alleged defects in service: "[n]ot served on Defendant personally or at her residence" and "[s]erver refused to identify or show credentials." (Doc. 13 at 9.) The Court does not find these arguments persuasive. Plaintiff provided a sworn and notarized affidavit of service. (Doc. 9.) The affidavit indicates that Defendant was personally served at her place of employment in Boca Raton, Florida on November 6, 2025. (*Id.* at 1.) The process server was an authorized process server in Florda. (*Id.* at 2.) The process server attests he/she informed Defendant of the contents of the Documents and otherwise followed the relevant laws and procedural requirements. (*Id.* at 1–2.)

Under Rule 4(e), a plaintiff may effectuate personal service in another state by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state

7

where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Service was effectuated in accordance with Florida's statute on service of process. *See* Fla. Stat. VI § 48.031 (2020). Contrary to Defendant's complaints, nothing in the statute requires a process server to verbally identify themselves. *Id*.; *see also Howard v. Harris*, Case No. 4:22cv97-AW-MAF, 2022 U.S. Dist. LEXIS 193901, *5 (N.D. Fla, Sept. 20, 2022) ("At any rate, Rule 4(e)(2)(B) does not include an introduction requirement.")

However, process servers are required to "place, on the first page only of at least one of the processes served, the date and time of service, his or her initials or signature, and, if applicable, his or her identification number." Fla. Stat. VI §§ 48.031(5), 48.29(6) (2020). Defendant has not claimed that such information was missing, and construing all facts and inferences in Plaintiff's favor, the Court finds service was substantively proper.

Defendant raises various complaints regarding Plaintiff's earlier attempts to serve process and the demeanor of the process server. (*See, e.g.*, Doc. 13 at 2.) These complaints may have been relevant to Defendant's motion to set aside default (Doc. 13). However, at this stage, none of these facts are relevant. Only the instance of personal service, effected on November 6, 2025, matters, and the court finds it does not constitute insufficient service of process under 12(b)(5). (*see* Doc. 9)

### d.     12(b)(6)

Defendant asserts multiple defenses under Rule 12(b)(6). (Doc. 13 at 6–7.) She asserts Plaintiff fails to state a claim and that Plaintiff's claim is barred by the statute of limitations. *Id*. at 6–7, 12.) Defendant also raises affirmative defenses against Plaintiff's allegations of copyright infringement. (*Id*. at 11.) These include express license, independent creation, no work for hire, and fair use. (*Id*.) The Court will address these defenses below.

8

### 1. Failure to state a claim

Defendant raises the defense of failure to state a claim upon which relief can be granted. Defendant asserts that "Plaintiff has failed to specify any precise date, act, or manner of alleged infringement, rendering her claim impermissibly vague and subject to dismissal." (Doc. 14 at 6–7.) "The elements of a copyright-infringement claim are (1) ownership of the copyright by the plaintiff and (2) copying by the defendant." *Zomba Enters., Inc. v. Panorama Recs., Inc.*, 491 F.3d 574, 581 (6th Cir. 2007). Taking the allegations in the complaint as true, Plaintiff pleaded facts sufficient to state a claim for copyright infringement that is plausible on its face. *Twombly*, 550 U.S. at 570. The Complaint provides intelligible facts, dates, and arguments sufficient to put Defendant on notice of the nature of the claims alleged. (*See, e.g.*, Doc. 1 ¶¶ 27-34.) Plaintiff provided a United States Copyright Office Registration Certificate for the Work and a copy of the allegedly infringing work. (Docs. 1-3, 1-4[2].) Plaintiff also provided a comparison document of the two works side-by-side demonstrating the instances of identical wording. (Doc. 1-5.) Plaintiff presented evidence that Defendant was, or was seeking to, profit off of the allegedly infringing work. (Doc. 1 ¶¶ 27, 31–34.) The Court finds the claims set forth in the complaint sufficient to survive a 12(b)(6) motion to dismiss.

### 2. Statute of limitations

Defendant alludes to potential issues involving a statute of limitations. (*See, e.g.*, Doc. 13 at 7, 12.) By statute, "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). The Sixth Circuit Court of Appeals applies the "discovery rule," to copyright infringement actions, which dictates

---

[2] Exhibits attached to the complaint are considered part of the complaint for purposes of a motion to dismiss. *See* Fed. R. Civ. P. 10(c).

"a claim accrues when 'the plaintiff discovers, or with due diligence should have discovered,' the infringing act." *Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366, 369 (2024) (quoting *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 670 n.4 (2014)).

Here, Plaintiff alleges infringing conduct in 2025. (*See* Doc. 1 ¶¶ 27, 30.) Thus, the statute of limitations does not bar Plaintiff's claims.

### 3. Express license

"[A]nyone who is authorized by the copyright owner to use the copyrighted work . . . is not an infringer of the copyright with respect to such use." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984)). Plaintiff explicitly rejects the idea that Defendant was given an express license or authorization to copy or otherwise use the Work. (*See* Doc 1 at 1.) ("Defendant . . . has used Plaintiff's registered work without Plaintiff's permission to create and sell a knock-off book or books and related merchandise."). Defendant claims Plaintiff granted her "unrestricted creative license." (Doc. 13 at 7.) But Plaintiff providing Defendant with wide discretion in the content and nature of her artistic creations does not itself constitute the bestowal of a license to the privileges protected by copyright. Construing all facts in the light most favorable to the non-moving party, the Court cannot find the existence of an express license.

### 4. Independent creation

Similarly, the Court does not find Defendant's argument of independent creation persuasive to dismiss the case prior to the merits. A "defendant may rebut the presumption of copying by showing independent creation of the allegedly infringing work." *Fogerty v. MGM Grp. Holdings Corp.*, 379 F.3d 348, 352 (6th Cir. 2004) (citing *Ellis v. Diffie*, 177 F.3d 503, 507 (6th Cir. 1999)).

Defendant asserts that there was no copying and she "created all art independently." (Doc. 13 at 11.) Regarding the text, Plaintiff authored the narrative years earlier and gave it to Defendant as inspiration for creating associated illustrations. Given this timeline and Defendant's access to the Work, the Court cannot find that the parallels with Defendant's book are mere coincidence. Thus, Plaintiff has alleged facts that, on their face, paint a plausible picture of infringement sufficient to survive a motion to dismiss.

### 5. Work-for-hire agreement

Defendant argues that she owns the copyright, as there was no work-for-hire agreement. Under a work-for-hire agreement, "the employer or other person for whom the work was prepared is considered the author . . . and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright." 17 U.S.C. § 201(b).

The Copyright Act defines a "work made for hire" as:

> "(1) a work prepared by an employee within the scope of his or her employment; or (2) a work specially ordered or commissioned for use as a contribution to a collective work . . . if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire."

17 U.S.C. § 101.

Defendant asserts that she was not an employee, there is no written signed agreement, and no transfer of copyright for the illustrations occurred. (Doc. 13 at 11–12.) Defendant claims she "would never sign a document giving permission to someone to have control or ownership over what I have created." (Doc. 17 at 7.) However, there does appear to have been a contract in some capacity memorializing the terms of the agreement. (*See* Doc. 1-2.) An email from Defendant to Plaintiff, dated March 15, 2021, outlines the financial arrangement agreed to by the parties, and references a contract. (*Id.*)

11

Defendant does not address copyright claims to the text itself. Plaintiff's Certificate of Copyright in her name creates a prima facia presumption of validity. 17 U.S.C. § 410(c). "Although the presumption may be rebutted, it is the burden of the party challenging the copyright to do so." *Hi-Tech Video Prods., Inc. v. Cap. Cities/ABC, Inc.*, 58 F.3d 1093, 1095 (6th Cir. 1995) (citing *Gates Rubber Co. v. Bando Chem. Indus., Ltd.,* 9 F.3d 823, 831 (10th Cir.1993)).

Construing facts in the light most favorable to Plaintiff and making reasonable inferences, the Court finds that a written contract existed and ownership of the copyright vested in Plaintiff. However, this issue would require fleshing out at a further stage of litigation, particularly as it relates to a work-for-hire contract for the illustrations provided by Defendant.

### 6. Fair use

Finally, Defendant asserts the doctrine of fair use precludes liability, since her work was transformative and for a therapeutic purpose. (Doc. 13 at 12.) The fair use doctrine has been codified in 17 U.S.C. § 107. "The purpose of the fair-use doctrine is to ensure that courts 'avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster.'" *Zomba Enters*., 491 F.3d at 581 (quoting *Princeton Univ. Press v. Mich. Doc. Servs., Inc.*, 99 F.3d 1381, 1385 (6th Cir. 1996)). "[A]n affirmative defense of fair use can be considered at the motion to dismiss stage." *Zlozower v. Rock & Roll Hall of Fame & Museum, Inc.*, No. 1:24CV1817, 2025 WL 3134584, at *3 (N.D. Ohio Nov. 10, 2025).

Under the statute,

[i]n determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—
    (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
    (2) the nature of the copyrighted work;
    (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

First, the purpose and character of the work. This element evaluates whether the work is commercial or educational, and whether the new work is transformative. A work is transformative if it adds new expression, meaning, or message to the work, rather than merely superseding or supplanting the original creation. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). It "considers whether the use of a copyrighted work has a further purpose or different character, which is a matter of degree, and the degree of difference must be balanced against the commercial nature of the use. *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 532 (2023).

Even a work that incorporates the entire original, or copies it verbatim, "may be transformative so long as the copy serves a different function than the original work." *Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1262 (11th Cir. 2014) (quoting *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007)). The Supreme Court has held that "transformative use is not absolutely necessary for a finding of fair use" but "the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Campbell*, 510 U.S. at 579.

Here, the work appears to clearly be commercial. Plaintiff alleges numerous facts indicating that Defendant sought to sell, or otherwise financially benefit from the work, such as by promoting her other art and merchandise and by marketing the allegedly infringing work. (Doc. 1 ¶¶ 27, 31–34.) Even if a product is designed to have a therapeutic effect on the user, that does not diminish the commercial nature of selling and marketing the product itself.

13

The work is not transformative either. It is true that copyright protections do not "extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 USCS § 102. There is not copyright protection over the general concept of a children's story inspired by the ocean or fish. Of these there are many. *See, e.g.*, FINDING NEMO (Pixar Animation Studios & Walt Disney Pictures 2003); DR. SEUSS, ONE FISH TWO FISH RED FISH BLUE FISH (Random House 1960); MARCUS PFISTER, THE RAINBOW FISH (J. Alison James trans., North-South Books 1992). However, particular works, most relevant here being "literary works" and "pictorial, graphic, and sculptural works" may be protected. 17 USCS § 102(a)(1), (6).

In this case, the text of the two stories is largely identical. (*See* Doc. 1-5.) (Comparing the text of the books and highlighting identical portions.) While that alone is not determinative, the products also have the same general function and target consumer. This is not a case where an original was used as inspiration to create a related, but totally new product. *See Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 33 (2021) (finding fair use despite extensive verbatim copying due to product's new transformative nature.). Nor does Defendant seek to provide commentary on or parody the original. *See id*. at 30 ("[A] parody can be transformative because it comments on the original or criticizes it"). Both versions have the same medium of a children's book and share the same core themes and messages. Defendant's version does not add substantively new meaning to the reader, nor does it use the material in a substantively different way. *See Andy Warhol Found.*, 598 U.S. at 532 ("[A] use may be justified because copying is reasonably necessary to achieve the user's new purpose.").

Second, the nature of the copyrighted work. "[A] use is less likely to be deemed fair when the copyrighted work is a creative product." *Stewart v. Abend*, 495 U.S. 207, 237 (1990) (quoting

Case 1:25-cv-00201-CLC-CHS    Document 18    Filed 07/24/26    Page 14 of 17
PageID #: 365

*Abend v. MCA, Inc.*, 863 F.2d 1465, 1481 (9th Cir. 1988)). "This factor calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." *Campbell*, 510 U.S. at 586.

Here, the Work is a highly creative and unique expression. It is precisely the type of work the copyright laws sought to protect. *See id.* ("[The] creative expression for public dissemination falls within the core of the copyright's protective purposes.") This factor tends against fair use, as the material is creative in nature, not factual, and falls within the intended protections of the copyright statute.

The third factor asks whether "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(c). This factor addresses whether the use was small, necessary, or if it comprised the "heart of the original." *Campbell*, 510 U.S. at 587. "This factor calls for thought not only about the quantity of the materials used, but about their quality and importance, too." *Id.* "[A] work composed primarily of an original, particularly its heart, with little added or changed, is more likely to be a merely superseding use, fulfilling demand for the original." *Id.* at 587–88. "The fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material" *Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539, 565 (1985).

Defendant's version copies a substantial portion of the Work and all key themes and motifs. (*See* Doc. 1-5.) While Defendant's version adds new text such that the story is not literally verbatim copying, that itself is not enough for dismissal. *Andy Warhol Found.*, 598 U.S. at 541 ("*Campbell* cannot be read to mean that §107(1) weighs in favor of any use that adds some new expression, meaning, or message."). The Supreme Court explained that "meaning or message was

15

simply relevant to whether the new use served a purpose distinct from the original, or instead superseded its objects." *Id*. at 542. Taking facts in the light most favorable to Plaintiff, the amount and centrality of the portion used in relation to the original does not support a finding of fair use. It comprises the "heart" of the original, supplanting it rather than adding novel perspective or use.

The fourth factor, the effect on the market or value of the work, is the "most important, and indeed, central fair use factor." *Stewart*, 495 U.S. at 238 (citing 3 Nimmer § 13.05[A], p. 13-81). "Fair use, when properly applied, is limited to copying by others which does not materially impair the marketability of the work which is copied." *Harper & Row*, 471 U.S. at 566–567 (1985) (quoting 1 Nimmer § 1.10[D], at 1-87). The enquiry "must take account not only of harm to the original but also of harm to the market for derivative works." *Campbell*, 510 U.S. at 590 (quoting *Harper & Row*, 471 U.S. at 568).

As previously explained, the format and substantive material have high amount of overlap. Plaintiff claims that the competition of Defendant's product would impinge on future sales of the Work. (Doc. 1 ¶¶ 30–33.) In support, Plaintiff points to Google search results and reviews left on Defendant's website as evidence that prospective purchasers would be pulled away from Plaintiff's product and enticed to substitute Defendant's product instead. (*Id*.) Plus, Plaintiff claims to have a publisher, who "has refused to publish the Work until the issue of copyright ownership is resolved." (Doc. 1 at 5.)

Defendant responds that her product is "an entire art journey experience" and that "it certainly [is] not the same market." (Doc. 13 at 2.) Defendant also asserts that Plaintiff does not have a market at all, since the material is only two and a half pages of text. (*Id*.) But the text itself is the heart of a storybook. And Plaintiff intended to publish it as an illustrated book, the exact

16

format that the infringing work takes and that Defendant attempted to sell.  This contradicts the argument that there is no market for the work.

The Court finds that Defendant's product would likely have a notable effect on the potential market for and value of the Work.  Common sense points to the same conclusion.  The allegedly infringing version would directly compete with the Work and harm Plaintiff's ability to profit from it.  The same is true for derivative products, such as merchandise that uses text or images derived from the Work.

None of the four factors point towards fair use.  Nor do any of the previously discussed arguments merit dismissal.

## IV.     CONCLUSION

Accordingly, Plaintiffs motion to dismiss will be **DENIED**.  Defendant **shall** file an answer to the complaint within **fourteen (14) days** of the entry of the accompanying Order.  (*See* Fed. R. Civ. P. 12(a)(4)(A).)  If Defendant fails to do so, absent an extension or other permission of the Court, she risks being held in default.  (*See id*.)


**AN APPROPRIATE ORDER WILL ENTER.**


**/s/**_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**